# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **Sandra H.,[1]** | Case No. 3:19-cv-02078-IM |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **ANDREW M. SAUL,** Commissioner of Social Security, | |
| Defendant. | |

Kevin Kerr, Schneider Kerr & Robichaux, P.O. Box 14490, Portland, Oregon 97293. Attorney for Plaintiff.

Billy J. Williams, United States Attorney, and Renata Gowie, Civil Chief, United States Attorney's Office, 1000 SW Third Avenue, Suite 600, Portland, Oregon 97204; Sarah L. Martin, Special Assistant United States Attorney, Office of General Counsel, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Attorneys for Defendant.

**IMMERGUT, District Judge**

Plaintiff seeks judicial review of Defendant Commissioner of Social Security's final

decision denying Plaintiff's claim for Disability Insurance and Supplemental Security Income

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

benefits pursuant to 42 U.S.C. §§ 405(g) and 1383(c). ECF 12 at 1. For the following reasons, the Court affirms in part the Commissioner's decision and reverses and remands in part this action to the ALJ for further proceedings consistent with this opinion. On remand, the ALJ must explicitly address the supervision limitation expressed in Dr. Gomes's opinion. The ALJ should either incorporate it expressly into the RFC or provide sufficient reasons for rejecting it.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

PAGE 2 – OPINION AND ORDER

# BACKGROUND

**A.  Plaintiff's Application**

Plaintiff was born on May 31, 1964. AR 199. Plaintiff filed applications for Disability Insurance and Supplemental Security Income benefits with a protective filing date of April 27, 2011. AR 199, 206; *see* AR 223. Plaintiff claimed disability with an alleged onset date of March 3, 2009. AR 199, 206.

The claims were denied initially on March 7, 2012, and upon reconsideration on February 4, 2013. AR 136, 140; 150, 153. A hearing was held on July 3, 2014, before Administrative Law Judge Rudolph M. Murgo. AR 272. On July 22, 2014, the ALJ issued a decision, finding Plaintiff was not disabled at any time from the alleged onset date through the date of decision. AR 38. On March 29, 2016, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner of Social Security. AR 1, 14.

On June 1, 2016, Plaintiff filed suit in the District of Oregon for review of the Commissioner's decision. AR 652-53. On July 18, 2017, the U.S. District Court reversed the Commissioner's decision and remanded the case for further proceedings. AR 655–74. The Appeals Council remanded the case for a new hearing, AR 681, which was held on July 26, 2018, before ALJ Murgo. AR 588. Supplemental hearings were held with medical experts on December 20, 2018, and May 2, 2019. AR 561, 532. A final supplemental hearing was held on August 7, 2019. AR 623. On August 23, 2019, the ALJ issued a decision, finding that Plaintiff became disabled on May 30, 2019, but was not disabled prior to that date. AR 520–21. The Appeals Court did not review this decision, and it became final on October 22, 2019. AR 500. Plaintiff then filed this action seeking further proceedings to address allegedly harmful legal errors.

## B. The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the

claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.    Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.    Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled.

*Id.*; *see also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.* at 1099, 1100. *See also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

### C.  The ALJ's Decision

At step one of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. AR 506.

At step two, the ALJ found that Plaintiff suffered from severe impairments including "degenerative disc disease, obesity, chronic pain syndrome, generalized anxiety disorder, major depressive disorder, and substance addiction disorder/opiates." *Id*.

At step three the ALJ found that none of Plaintiff's impairments met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id*.

Between steps three and four, the ALJ found that Plaintiff had the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with additional limitations:

> she can never climb ladders, ropes and scaffolds, can occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl, should avoid concentrated exposure to heights, hazards and heavy equipment and concentrated exposure to vibration, and can perform simple, routine tasks with occasional public contact and frequent contact with coworkers.

AR 509.

At step four the ALJ found that Plaintiff was unable to perform her past relevant work. AR 518.

At step five, based on vocational expert (VE) testimony, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform for the period prior to May 30, 2019. AR 519. The ALJ found that Plaintiff's age category changed on May 30, 2019, and that there were no jobs existing in significant numbers that Plaintiff could perform after that date. AR 520.

The ALJ thus concluded that Plaintiff was not disabled prior to May 30, 2019, but became disabled on that date. AR 520.

PAGE 6 – OPINION AND ORDER

**DISCUSSION**

Plaintiff presents two issues for this Court: (1) whether the ALJ erred by rejecting the opinion of an examining psychologist, and (2) whether the ALJ denied Plaintiff due process by barring questions presented to a medical expert. ECF 12 at 4.

**A.   Whether the ALJ improperly rejected the opinion of an examining psychologist**

   **1.   Background**

Dr. Manuel Gomes performed a psychological evaluation of Plaintiff in March 2017 and provided a medical source statement. AR 1218-26. Dr. Gomes stated that Plaintiff "will have difficulty" accepting instructions from supervisors, "as she is sensitive to perceived abusive treatment." AR 1224. Dr. Gomes stated that Plaintiff will have "[n]o significant difficulties" interacting with "coworkers and the general public." *Id*. He explained that she "will have some initial difficulty" with respect to coworkers and the general public but can overcome it. *Id*. Dr. Gomes noted that Plaintiff "will have difficulty" dealing with "the usual workplace stressors" because she "has overall poor social skills." *Id*.

   The ALJ summarized Dr. Gomes's opinion as follows:

   [Plaintiff] was able to perform simple and repetitive tasks but would have difficulty sustaining detailed and complex tasks, would have difficulty accepting instructions from supervisors but no significant difficulties interacting with coworkers and the general public, had no mental health symptoms that would preclude her ability to maintain regular attendance, and would have difficulty dealing with the usual workplace stressors."

AR 516.

   The ALJ gave Dr. Gomes's opinion "significant weight." AR 516. He stated that Dr. Gomes's opinion "is supported by the findings on [the] mental status exam, which revealed no difficulties with understanding or being understood but some difficulties with concentration. It is also consistent with the claimant's minimal mental health treatment." *Id*. The ALJ stated that a

limitation to "simple, routine tasks with occasional contact with the public and frequent contact with coworkers adequately accounts" for Plaintiff's "difficulty dealing with workplace stressors." *Id*.

Plaintiff contends that the "ALJ did not discuss, and did not adopt, Dr. Gomes's opinion with respect to accepting instructions from supervisors. In effect, the ALJ rejected Dr. Gomes's opinion on this point, and did so without a word of explanation." ECF 12 at 6. Plaintiff argues that the ALJ committed harmful legal error because "[a] substantial loss of ability to meet [the supervision response requirement] would severely limit the potential occupational base. This, in turn, would justify a finding of disability because even favorable age, education, or work experience will not offset such a severely limited occupational base." ECF 12 at 6 (quoting SSR 85-15) (internal quotation marks omitted).

### 2.  Analysis

"An ALJ errs when he fails to explain why he did not account for a portion of a physician's opinion in formulating the claimant's RFC." *Shelley V. v. Saul*, No. 6:18-CV-01760-SB, 2020 WL 1131489, at *8 (D. Or. Mar. 9, 2020) (citing *Harris v. Berryhill*, No. 17-1506, 2018 WL 3343219, at *11 (W.D. Wash. July 9, 2018)). Here, the ALJ gave "significant weight" to Dr. Gomes's opinion, which included "difficulty" accepting instructions from supervisors, "[n]o significant difficulties" interacting with "coworkers and the general public," and "difficulty" dealing with workplace stressors. AR 1224. The ALJ purported to address Plaintiff's "difficulty" with workplace stressors by permitting different degrees of contact with the public and coworkers in Plaintiff's RFC. AR 509; AR 516. The ALJ's solution did not appear to incorporate Plaintiff's difficulty with supervisors, even though Dr. Gomes's opinion described supervision and workplace stressors as presenting the same level of difficulty for Plaintiff.

In determining whether this supervisor limitation omission is error, this Court finds the analysis in *Dennis v. Colvin*, No. 06:14-CV-00822-HZ, 2015 WL 3867506 (D. Or. June 20, 2015), instructive. In that case, the district court discussed at length cases in which an ALJ gave great weight to a medical source's opinion, including limitations specific to supervision, but thereafter did not address it. *Dennis*, 2015 WL 3867506, at *7-8. District courts faced with an objection on these grounds regularly find such seemingly inadvertent disregard to be error. *Id*. As the *Dennis* court explained:

> When the ALJ credits the opinion of a medical source which includes the limitation on the ability to interact appropriately with supervisors, the omission of this specific, concrete limitation in the RFC is error because it is a limitation not requiring 'capturing' or 'translation' and limitations on interactions with the public or coworkers do not address the separate dynamic created by the supervisory relationship.

*Id*. at *8. For the reasons explained in *Dennis*, this Court finds that the ALJ erred by omitting Plaintiff's limitation with respect to supervision from the RFC.

Defendant argues that this error was harmless. ECF 13 at 4-6. An error is harmless if it is "inconsequential to the ultimate nondisability determination in the context of the record as a whole." *Molina v. Astrue*, 674 F.3d 1104, 1122 (9th Cir. 2012) (citations and internal quotation marks omitted) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055-56 (9th Cir. 2006)). "[A] reviewing court cannot consider [an] error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout*, 454 F.3d at 1055–56. In applying harmless error analysis, a district court still must follow the rule of *Sec. & Exch. Comm'n v. Chenery Corp.*, which held that a reviewing court may only affirm agency action on "the grounds invoked by the agency." 332 U.S. 194, 196 (1947); *see also Marsh v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015).

Defendant argues that Plaintiff's ability to deal with coworkers and the public renders the supervisory omission harmless, ECF 13 at 5, but as discussed above, those relationships are meaningfully different from the supervisory relationship. *See Dennis*, 2015 WL 3867506, at *9 (explaining how "the unique relationship of a supervisor to an employee" means that omitting a supervisor limitation is not a "small error"). Indeed, Dr. Gomes recognized this difference by opining that Plaintiff "will have difficulty" accepting instructions from supervisors but will have "[n]o significant difficulty" with coworkers or the public. AR 1224.

Defendant then argues that this Court may apply harmless error to reject the supervision aspect of Dr. Gomes's opinion because Plaintiff conceded elsewhere "that she does not have trouble with authority figures." *Id.* at 5-6 (citing AR 245, 1001). However, because the ALJ gave that opinion "significant weight," such a course would implicate the *Chenery* principle as articulated in this Circuit.[2]

---

[2] Defendant argues that the ALJ properly rejected this aspect of Dr. Gomes's opinion because it was vague and unhelpful and because other evidence supported the rejection; Defendant also argues that any error was harmless because Plaintiff admitted twice elsewhere to not having difficulty with supervisors. ECF 13 at 3-6. Defendant cites cases from other circuits for the proposition that harmless error analysis is "an exception to the *Chenery* doctrine." ECF 13 at 4-5. However, a more recent Ninth Circuit opinion, *Marsh v. Colvin*, explicitly noted that the *Chenery* principle continues to apply in the harmless error context, at least in this Circuit: "If the district court had applied harmless error in a way that affirmed the agency on a ground not invoked by the ALJ, then the district court would have violated the *Chenery* principle." *Marsh v. Colvin*, 792 F.3d at 1172; *see also Kevin A. v. Saul*, No. 18-CV-07056-SK, 2020 WL 1549575, at *4 (N.D. Cal. Feb. 24, 2020) ("Because the ALJ did not base the denial on Plaintiff's missed scans, the Court cannot apply harmless error to affirm the agency on that ground.") (citing *Marsh*, 792 F. 3d at 1172); *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1005 n.3 (9th Cir. 2006) (providing "additional support for the Commissioner's and the ALJ's position" is permissible and not a "post-hoc rationalization").

District courts have found that omissions of supervisory limitations in medical opinions that the ALJ purportedly accepted constitute harmful error. *See, e.g., Dennis*, 2015 WL 3867506, at *2, *9 (noting this is not a "small error"); *Ferguson v. Colvin*, No. 3:15-CV-01532-SU, 2016 WL 7042076, at *5 (D. Or. Dec. 2, 2016) (explaining "the omission of a supervisor restriction is not a 'small error' which may be considered harmless given the 'unique relationship of a supervisory to an employee'") (quoting *Dennis*, 2015 WL 3867506, at *9); *Gentry v. Colvin*, No. 1:12-CV-01825-SKO, 2013 WL 6185170, at *16 (E.D. Cal. Nov. 26, 2013) (finding ALJ erred in not including limitation on co-worker and supervisor interaction and ordering remand); *Little v. Comm'r of Soc. Sec.*, 780 F. Supp. 2d 1143, 1153-54 (D. Or. 2011) ("[SSR 85-15] notes that unskilled jobs ordinarily involve dealing primarily with objects, and not people, but do require the ability to respond appropriately to supervision and coworkers."); *but see Andrea A. v. Saul*, No. 2:19-CV-09908-JC, 2020 WL 5961088, at *3 (C.D. Cal. Oct. 8, 2020) (finding the supervision limitation omission to be harmless error because the cleaner, bagger, and marking clerk jobs identified at step five "do not appear to require anything more than superficial or incidental contact with supervisors, coworkers, and peers").

This Court finds the opinions finding harmful error in this context persuasive. Here, Dr. Gomes suggested that Plaintiff's difficulty with supervisors would be more limiting than her difficulty with the public and with coworkers, but the RFC explicitly addressed only limitations with respect to the public and coworkers. Accordingly, this Court cannot "confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout*, 454 F.3d at 1055–56. Therefore, the error was harmful. The Court remands the action to the ALJ to explicitly address the supervision limitation expressed in

Dr. Gomes's opinion. The ALJ should either incorporate it expressly into the RFC or provide

sufficient reasons for rejecting it.

**B.  Whether the ALJ denied Plaintiff due process by barring questions presented to a medical expert**

    **1.  Background**

The ALJ called Dr. John Bonner Nance to testify at the hearing held May 2, 2019. AR

532, 547. Dr. Nance testified that Plaintiff's medical condition medically equaled the "C" criteria

of the mental health listings, based on fatigue from medications. AR 550, 552. Dr. Nance

explained that he thought Plaintiff would meet the "C" criteria because of "a somatization

disorder," as "the levels of Gabapentin and methadone that the claimant was taking was leading

to fatigue." AR 551-52. Plaintiff's counsel followed up by asking, "Because the CODA people

are giving her too much methadone, in short? . . . Why wouldn't they just reduce the methadone

and/or Gabapentin?" AR 552. Dr. Nance responded that "that's a medical question that I'm not

capable of answering. Actually Dr. Finley did very much reduce levels." AR 552. Counsel later

asked Dr. Nance about certain evidence in the record of "the doctor observing [Plaintiff] falling

asleep during an office visit" and how that would fit into his evaluation. AR 555. Dr. Nance

responded by explaining that "those reports" are inconsistent: for example, Dr. Finley reported

sometimes that Plaintiff was "nodding out," but there are "other times when she's wide awake.

So I can't just draw a conclusion in terms of the evidence that's given me . . . ." AR 555-56.

When Plaintiff's counsel attempted to ask Dr. Nance explicitly about side effects of

Plaintiff's medications, the ALJ disallowed the question because Dr. Nance was a psychologist,

not a psychiatrist, and was not authorized to prescribe medications. AR 557. Counsel protested

that "[Dr. Nance is] speaking sensibly of her sedation, he can speak to side effects." AR 557. The

ALJ still did not allow the question explicitly on side effects. AR 558.

Plaintiff's counsel then asked Dr. Nance about the time frame for his "C" criteria opinion. AR 558. Dr. Nance discussed how Plaintiff had been in medical treatment in structured settings, and he noted that "even though Dr. Finley has some concerns about the Gabapentin and methadone being too much, [ ] still it's all been properly prescribed and properly used medication. So I do feel that criteria one is met. I would say that I would use a date of June 2014." AR 558.

At the conclusion of the cross-examination, the ALJ stated, "We'll have a supplemental hearing with a psychiatrist." AR 559. A supplemental hearing was scheduled and held on August 7, 2019. AR 623. The ALJ again noted that this was scheduled to obtain testimony from a psychiatrist. AR 625. However, noting that the scheduling unit was "unable to arrange for a psychiatrist," the ALJ stated that he would "proceed with what we have" and issue a "decision based on the record I have." AR 626. The ALJ permitted Plaintiff's counsel to make an argument, and Plaintiff's counsel explained that his "theory of her case" is "pretty clear. The side effects of these medications have a significant effect on her. She's noted to be falling asleep at the last hearing, falling asleep during doctors' visits. I get that these doctors are saying that she should not be prescribed the methadone, but the fact is that she still is." AR 626-27.

In his written opinion, the ALJ determined that Plaintiff's medical condition did not medically equal the "C" criteria of the mental disorder listings. AR 508-09; *see also* AR 517 (similar discussion). The ALJ discussed how "Dr. Nance testified the claimant's impairments equal the 'C' criteria because of cognitive effects of Gabapentin and Methadone." *Id*. at 508. The ALJ gave Dr. Nance's testimony "little weight" because Dr. Nance admitted that memory loss was not objectively established in the record, there was no evidence of formal testing of her memory, there was no documentation of loss of cognitive function, and Plaintiff performed

adequately on mental status exams and even on more complicated tasks. *Id.* The ALJ discussed Plaintiff's interactions with her physicians with respect to her use of these medications and their effects on her. AR 509. He stated, "While there are periodic references to sedation from medications, this has not been a persistent issue and it appears these episodes occurred due to double dosing." *Id.* The ALJ noted "concerns of sedation" in one physician report from Dr. Finley, but that Plaintiff "had clear speech and answered all questions on a mini mental exam" the next week. *Id.*; *see also* AR 1405. He discussed how "Dr. Finley expressed concern that her Methadone dosage was too high," and that "Dr. Finley encouraged her to decrease her dosage as she was much more alert and interactive" when she "was trying to wean down." AR 509. The ALJ explained that "Dr. Nance's testimony concerning the 'C' criteria is not consistent with the record as a whole." *Id.* The ALJ concluded that there "is no evidence of further issues with excessive sedation." *Id.*

Plaintiff argues that the ALJ effectively "barred Plaintiff from asking the question regarding medication side effects." ECF 12 at 7. Plaintiff argues that this error is harmful because "counsel's question remains unanswered, and as such, the impact of these medications on Plaintiff's RFC has not been fully developed." *Id.*

**2. Analysis**

Plaintiff argues that the ALJ denied her due process by not permitting questions explicitly on medication side effects, either to Dr. Nance or in a supplemental hearing with a psychiatrist. ECF 12 at 7. However, even assuming this was error, Plaintiff has not shown that she was prejudiced. "The burden is on the party claiming error to demonstrate not only the error, but also that it affected his 'substantial rights,' which is to say, not merely his procedural rights." *Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012) (citation omitted). While "the claimant need not necessarily show what other evidence might have been obtained had there not been error," she

"does have to show at least a 'substantial likelihood of prejudice.'" *Id*; *see also Brooks v. Barnhart*, 66 F. App'x 728, 729 (9th Cir. 2003) (explaining that a claimant seeking reversal of an ALJ's decision on the ground of failure to develop the record via supplemental hearing must "demonstrate[] that the failure to hold a supplemental hearing was prejudicial," such as by "show[ing] what evidence would have been introduced . . . or how any such evidence would have differed from what was already in the record") (citing *Cruz v. Schweiker*, 645 F.2d 812, 814 (9th Cir. 1981)).

　　　　The Court finds that Plaintiff has not met her burden of showing at least a substantial likelihood of prejudice. Plaintiff does not specify in her opening brief what side effects she seeks further testimony on or suggest how this further testimony might affect the disability determination. Based on the reply brief and record, the Court speculates that Plaintiff's counsel was mostly concerned with the side effect of sedation.[3] *See* ECF 14 at 4; AR 627 ("[M]y theory of her case [is] pretty clear. The side effects of these medications have a significant effect on her. She's noted to be falling asleep at the last hearing, falling asleep during doctors' visits."). Notably, even though the ALJ disallowed questions explicitly about medication side effects, Dr. Nance was permitted to, and did, answer counsel's questions concerning sedation that resulted from Plaintiff's medications. Dr. Nance explained that he thought she would meet "C" criteria because of "a somatization disorder," as "the levels of Gabapentin and methadone that the claimant was taking was leading to fatigue." AR 551-52. Plaintiff's counsel followed up by asking, "Because the CODA people are giving her too much methadone, in short? . . . Why wouldn't they just reduce the methadone and/or Gabapentin?" AR 552. Dr. Nance responded that

---

[3] The ALJ also discussed cognitive effects generally, including memory, in his discussion of Dr. Nance's testimony. *See* AR 508.

"that's a medical question that I'm not capable of answering. Actually Dr. Finley did very much reduce levels." AR 552. Counsel later asked Dr. Nance about "the doctor observing [Plaintiff] falling asleep during an office visit" and how that would fit into his evaluation. AR 555. Dr. Nance responded by saying that "those reports" are inconsistent. AR 555-56. Dr. Nance also explained that "even though Dr. Finley has some concerns about the Gabapentin and methadone being too much, [ ] still it's all been properly prescribed and properly used medication. So I do feel that criteria one is met." AR 558. Counsel noted that "[Dr. Nance is] speaking sensibly of her sedation . . . ." AR 557.

In sum, it appears that Plaintiff's "theory of the case" was addressed through counsel's examination of Dr. Nance. Dr. Nance spoke about the medication's effect on sedation, Dr. Finley's reports, and the concerns about prescribed dosage. These concerns were raised and were part of the record before the ALJ. The ALJ then discussed "evidence of sedation," as well as cognitive effects and memory, in his opinion. Plaintiff does not suggest or explain how further development of the record on the side effects issue might lead the ALJ to conclude differently. Plaintiff's briefing only argues in general terms that "the impact of these medications on Plaintiff's RFC has not been fully developed," ECF 12 at 7, or "fully explored," ECF 14 at 4. Such vague assertions, where Dr. Nance did in fact testify to the sedation issue and the ALJ discussed that issue and other cognitive effects in some detail, do not demonstrate a violation of due process.

Nor does Plaintiff argue that the ALJ's duty to further develop the record was triggered.[4] The ALJ's duty "to conduct an appropriate inquiry" is triggered only by "[a]mbiguous evidence,

---

[4] Even though Defendant correctly argues in its responsive brief that this duty must be triggered, *see* ECF 13 at 8, Plaintiff does not acknowledge this. *See* ECF 12 at 7; ECF 14 at 4.

or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (quotation marks and citations omitted). If the duty is triggered, the "ALJ may discharge this duty in several ways, including: subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record." *Id*. Here, Plaintiff does not argue that the evidence cited by the ALJ in his evaluation of sedation resulting from medications—such as Dr. Finley's comments concerning dosage—was ambiguous. *See Tonapetyan*, 242 F.3d at 1150. Indeed, Plaintiff does not engage with the ALJ's analysis of sedation or other cognitive effects, nor suggest how the ALJ's evaluation of this evidence was erroneous, except finding fault with the lack of further exploration in and of itself. *See* ECF 14 at 4. Plaintiff does argue that the ALJ deemed further testimony from a psychiatrist "necessary," *id*., but the Court finds otherwise. The ALJ's duty to conduct further inquiry may be triggered by the ALJ's "own finding that the record is inadequate to allow for proper evaluation of the evidence." *Tonapetyan*, 242 F.3d at 1150. Here, while the ALJ stated that "[w]e'll have a supplemental hearing with a psychiatrist," AR 559, he ultimately stated that he would "proceed with what we have" and issue a "decision based on the record I have." AR 626; *see also Brooks*, 66 F. App'x at 729 (after ALJ suggested that a supplemental hearing would be prudent, his unexplained "change in direction" "does not in itself provide a basis to set aside the denial of benefits"). The ALJ's statements do not constitute a finding that the record was inadequate.

"Considering the record as a whole, and the ALJ's explanation of his decision," this Court finds that Plaintiff "has not demonstrated that the decision would have been any different" if questions explicitly on side effects were permitted. *Ludwig*, 681 F.3d at 1054-55. Nor has

Plaintiff argued or shown that the ALJ's duty to further develop the record was triggered. Because Plaintiff does not explain how the alleged error might affect her substantial rights, and because the ALJ discusses sedation and cognitive effects of medications and supports his conclusion on those issues with substantial evidence, this Court cannot conclude that Plaintiff's due process rights were violated.

## CONCLUSION

The Commissioner's decision that Plaintiff was not disabled is AFFIRMED IN PART and REVERSED AND REMANDED IN PART for further proceedings consistent with this Opinion and Order.

**IT IS SO ORDERED**.

DATED this 11th day of February, 2021.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge